UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTEFANY MARTINEZ-GONZALEZ
and IMELDA LUCIO LOPEZ,

    Plaintiffs,

v.

LAKESHORE STAFFING, INC.
and RANDELL G. PRICE,

    Defendants.
_____/

Case No. 1:16-CV-1243

HON. GORDON J. QUIST

# OPINION

Plaintiffs, Estefany Martinez-Gonzalez and Imelda Lucio Lopez, filed their Complaint against Defendants, Lakeshore Staffing and its president and owner Randell Price (collectively, "Lakeshore"), on October 18, 2016. (ECF No. 1.) Martinez and Lopez alleged five counts of discrimination because of their Mexican nationality. The counts will be more fully described later in the Opinion.

On November 30, 2017, Lakeshore filed a motion for summary judgment and dismissal for failure to state a claim, moving the Court to dismiss the Complaint in its entirety. (ECF No. 28.) Lakeshore asserts that Martinez and Lopez were assigned tasks that are within their job description and are typically assigned to all employees in that position; that Martinez and Lopez are paid above the pay scale and are among the highest paid crew members; that Martinez and Lopez have not suffered any adverse employment actions; any claims of harassment are based on a few minor incidents that do not rise to an actionable level; and that there is no legal basis for the claims against Price in his individual capacity.

For the following reasons, the Court will grant Lakeshore's motion to dismiss for failing to state a claim on the Equal Pay Act claim,[1] and will grant summary judgment on the remaining claims.

## I. FACTS

Lakeshore staffing supplies employees to nineteen franchised McDonald's restaurants in the West Michigan area, employing around one thousand people. Martinez and Lopez have been employed by Lakeshore since 2009 and have worked only at a McDonald's on West Leonard Street in Grand Rapids, Michigan. Both Martinez and Lopez worked as cooks, a position classified under the broader designation of "crew member." Crew members work primarily at the front counter taking orders or cooking in the kitchen. Lakeshore also employed individuals classified as "maintenance," who handled typical maintenance duties such as cleaning the bathrooms, cleaning windows, cleaning kitchen vents, and so forth. However, crew members had secondary duties that they did regularly, including touching up the bathrooms, sweeping the floors, checking the parking lot for litter, and so forth. The written job description for "crew" includes, in pertinent part, the responsibility to "[k]eep general area clean" and "[c]onduct sweeps and mops." (ECF No. 28-12 at PageID.286.)

Lakeshore submitted affidavits of four different managers from the Leonard Street McDonald's, in which each manager stated that all crew members are assigned cleaning tasks. The managers include specific examples, *e.g.*, Terry Wilber, an African-American crew member, takes out the trash from his area daily, sweeps and mops the floors, spot cleans the bathroom, and cleans windows and doors; Sarah LaBelle, a Caucasian crew member, takes out trash, sweeps and

---

[1] The Equal Pay Act does not apply to claims based on national origin, and Martinez and Lopez failed to state a claim alleging gender-based pay disparity. Accordingly, they agreed to dismiss their claim and withdraw it. The Court will dismiss this claim with prejudice.

mops, cleans the grill, cleans the bathrooms, and cleans windows and doors. Maricela Pena, who is now a manager, specifically stated that

> [i]n [her] experience as a crew member, all crew members are regularly assigned to do cleaning tasks such as spot cleaning the bathrooms, windows and doors, mopping and sweeping the floors, and taking out the trash. . . . [E]mployees from all racial and ethnic backgrounds . . . have all been called upon to perform the[se] tasks . . . on a regular and routine basis.

(ECF No. 28-9 at PageID.228.) Two Caucasian crew members, Veronica Beltran and Brad Street, also signed affidavits. Beltran stated,

> As a crew member, I am most often assigned to work as a cook on the grill. However I am regularly assigned other tasks. Examples of the other things I do on a daily or almost daily basis are: take out the trash including boxes and containers (I do this almost every hour), clean glass doors and windows, clean bathrooms, sweep and mop the floors and outside the restaurant, clean the kitchen equipment and the grill.

(ECF No. 28-10 at PageID.231.) Street's declaration regarding his regular duties as a crew member is quite similar. (ECF No. 28-11 at PageID.234.)

The affidavits consistently state that there is no policy regarding the language to be spoken at the Leonard Street McDonald's, and that Spanish is regularly spoken. Pena, herself a fluent Spanish speaker, stated "[t]here is no 'English only' policy . . . and there never has been. . . . There has never been any problem or issue with [employees speaking Spanish regularly]." (ECF No. 28-9 at PageID.229.)

Pay for crew members is set between minimum wage and $9.50 per hour. (ECF No. 28-12 at PageID.241.) Martinez and Lucio were paid more than $9.50 per hour beginning March 1, 2016, and were frequently the, or among the, highest paid employees. (ECF No. 28-12 at PageID.242–46.)

Randell Price is the owner and president of Lakeshore, and has never interacted with Martinez or Lopez.

3

## II. FACTS PARTICULAR TO MARTINEZ AND LOPEZ

Martinez and Lopez assert that although they may technically be classified as "crew members," they "were primarily responsible for cooking and were not responsible for any of the other positions." Martinez and Lopez allege that they were forced to sweep the interior and exterior of the restaurant, clean doors and windows, clean bathrooms, take out trash, and remove ice during the winter.

Martinez, in particular, asserts that she was required on a regular basis to sweep when the restaurant first opened for the day; spread salt in the winter; occasionally take trash bags outside; clean the grill she used in the kitchen several times; and to clean the bathroom three times. (ECF No. 28-3 at PageID.192–94.) Lopez, in particular, asserts that she had to sweep outside on three occasions since 2009; clean doors or windows twice; clean the bathroom glass and sink once; take kitchen trash out; and clean the refrigerator. (ECF No. 28-4 at PageID.202–04.) Martinez and Lopez admit that they do not know if other crew members had these types of duties. (ECF No. 28-3 at PageID.193; ECF No. 28-4 at PageID.203.)

Martinez and Lopez assert that management and other employees treated them rudely, and there were other employees who were better suited to perform these tasks. They allege that, because of their national origin, they did not receive regular raises and received lower compensation than they should have. They also assert that they were asked to speak English only and not to speak Spanish, and were yelled at and disciplined on multiple occasions because of their national origin. Lopez alleges that she was disciplinarily written-up because she did not cook fresh fish, but she says that she did not realize the manager was talking to her. Martinez alleges that she was called "stupid" by a manager, written-up for being three minutes late to work, and written up for having her shirt untucked despite the fact that Lakeshore did not provide her with adequate

pants. Martinez and Lopez also cite derogatory comments by Crystal—then an employee—that were directed at Mexicans.

Martinez and Lopez admit that they had no interaction with Price but assert "just because he did not have any direct contact with the Plaintiffs' [sic] does not mean he has nothing to do with how they were managed, and the policies that were implemented." (ECF No. 31 at PageID.306.)

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### IV. DISCUSSION

Lakeshore argues that it is entitled to summary judgment because Martinez and Lopez were not discriminated against; suffered no adverse employment action; were among the highest paid employees in their position; experienced no harassment necessary to support a claim; and Price had no involvement in any of the allegations.

### A. Counts I & III: Discrimination

Martinez and Lopez's First and Third Counts allege illegal discrimination on the basis of national origin, brought under Title VII, U.S.C. § 2000(e)(2) and the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, respectively. The parties agree that the two claims, federal and state, are analyzed under identical standards.

Discrimination claims based on circumstantial evidence are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under *McDonnell Douglas*, the plaintiff first has the burden of establishing a prima facie case; if the plaintiff meets this burden, a presumption arises that the defendant discriminated against her in violation of Title VII. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). The burden then shifts to the defendant to put forth a legitimate, non-discriminatory reason for the alleged adverse treatment; if the defendant meets this burden, then the presumption falls away. *Id.* at 706–07. The burden then shifts back to the plaintiff to show that the defendant's legitimate, non-discriminatory reason was merely pretext for actual discrimination. *Id.* at 707. The plaintiff always bears "the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749 (1993)).

In order to establish a prima facie case, the plaintiff must show that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Id.* (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)).

1. **Adverse Employment Action**

"An adverse employment action is a 'materially adverse change in the terms or conditions of employment because of [the] employer's conduct,' which 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). Courts must consider "indices that might be unique to a particular situation." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 799 (6th Cir. 2004) (quoting *Kocsis*, 97 F.3d at 886), *aff'd*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). Petty slights and trivial annoyances do not arise to material adverse employment actions. *Id.* at 799.

Martinez and Lopez argue that they suffered adverse employment actions because they "were asked to perform menial tasks that were not within their job description, were written up, and were chastised for various different actions, simple [sic] due to their national origin." (ECF No. 31 at PageID.310.) However, Lakeshore provided a number of declarations from other employees attesting that the purported allegedly menial tasks were regularly and routinely done by any and all crew members—regardless of their national origin or race. If anything, the instances upon which Martinez and Lopez rely merely amount to petty slights and trivial annoyances with which other Lakeshore employees routinely deal while working at McDonald's. Martinez and Lopez disagree that their job responsibilities fall under Lakeshore's written responsibilities for crew members, instead they argue that their "primary duty" was cooking; this issue is not a genuine dispute of material fact because *Kocsis* explicitly stated that an alteration of job responsibilities is not a materially adverse employment action.

Martinez also cites instances in which she was written-up for disciplinary reasons and alleges that they were "clearly" adverse employment actions. Martinez does not argue, and indeed

7

cannot, that the write-ups were not based on a violation of employer policy. Instead, she argues that she was "only three minutes late," that she "never saw anyone else get a write up as quickly and as publically as she did," and that her shirt "was untucked because Lakeshore Staffing had failed to provide her with adequate uniform pants." (ECF No. 31 at PageID.312.) Discipline for a legitimate workplace violation without some negative impact cannot arise to a material adverse employment action. *See Cecil v. Louisville Water Co.*, 301 F. App'x 490, 501 (6th Cir. 2008) (finding no materially adverse action where negative performance evaluation did not significantly affect the plaintiff's salary or professional advancement); *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 409–10 (6th Cir. 1999) (rejecting disciplinary actions in the form of counseling memoranda as an adverse action).

Martinez and Lopez also allege that Lakeshore committed a materially adverse action against them by not giving them raises as regularly as required under company policy. This allegation is addressed below regarding Martinez and Lopez's second claim and, for similar reasons, fails here as well.

In short, Martinez and Lopez fail to establish adverse employment action as required to state a prima facie case.

### 2. Different Treatment from Similarly Situated Employees

The fourth element is also lacking. Martinez and Lopez fail to show that they were treated differently than similarly-situated, non-protected employees, *i.e.*, employees without Mexico as a nation of origin. The sworn affidavits provided by Lakeshore show that other employees regularly did the allegedly menial tasks to which Martinez and Lopez object, and the affidavits discount any allegation of an anti-Spanish policy—including statements from other employees who often spoke Spanish at work without any issues.

8

In addition to their factual failings, Martinez and Lopez offer no legal support that their factual allegations amount to a materially adverse employment action. Instead, they attack the affidavits of Lakeshore employees on the basis that the employees, who swore under penalty of perjury to the truth of their statements, "could stand to lose their job" and are therefore not credible. Martinez and Lopez assert that the Court cannot consider these affidavits because it would require a credibility determination that is inappropriate at the summary judgment stage. "Though the prospect of challenging a witness['s] credibility is not alone enough to avoid summary judgment, summary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant's witness." *Goodwin v. City of Painesville*, 781 F.3d 314 (6th Cir. 2015) (alteration in original) (internal quotations and citations omitted).

Martinez and Lopez offer no specific facts that call the witnesses' credibility into question. Plaintiff's own depositions do not contradict the fact that other crew members routinely and regularly perform the same allegedly menial tasks Martinez and Lopez were required to do. Being employed by a party to a suit is not a specific fact that calls into question the credibility of a witness. *See Adcor Indus., Inc. v. Bevcorp*, LLC, 252 F. App'x 55, 61 (6th Cir. 2007) (stating that "bare claims of bias do not undermine undisputed evidence").

Accordingly, the Court will grant Lakeshore summary judgment for Martinez and Lopez's discrimination claims in Counts I and III.

**B. Count II: Unequal Pay**

Martinez and Lopez's claim for unequal pay is also premised on national origin discrimination in violation of Title VII, 42 U.S.C. § 2000(e). They allege that Lakeshore discriminated against them "by treating them differently from and less preferably than similarly situated non-hispanic [sic] employees and subjecting them to discriminatory pay, discriminatory

9

denials of pay raises, and other differential treatment on the basis of their national origin affecting their compensation." (ECF No. 1 at PageID.9.) The same prima facie showing is required for this alleged violation of Title VII as that discussed above.

Lakeshore cited its employment data and asserts that Martinez and Lopez were the, or among the, highest-paid crew members employed at the Leonard Street McDonald's and therefore have not suffered an adverse employment action. Martinez and Lopez assert that they were not given routine raises and when they were given raises, they were less than those given to non-Hispanic employees.

Martinez and Lopez strongly rely on the pay data provided by Lakeshore and argue that it shows they did not receive raises in the same time frame or in the same amounts as others employed by Lakeshore. Lakeshore notes that raises are not guaranteed and are based on merit. Martinez and Lopez pull names and numbers seemingly at random and out of context in an attempt to support their claims; however, they fail to show evidence that they were, in fact, paid differently. For example, just as they cite individuals that on occasion received larger raises than they did, they fail to address the fact that other employees received smaller raises and there were large gaps between raises. Martinez and Lopez fail to address the fact that they were among the highest paid crew employees. In short, Martinez and Lopez provide no analysis to show that their pay was distinctly different from other employees in the aggregate and, accordingly, adverse or discriminatory. The burden rests on them to show that Lakeshore took a materially adverse employment action against them, and Martinez and Lopez have not reached this burden, nor have they shown that they were treated differently than similarly situated, non-Hispanic employees. Martinez and Lopez cannot cherry-pick certain employees' pay data that fit their narrative.

10

Accordingly, the Court will grant Lakeshore summary judgment on the unequal pay claim because Martinez and Lopez have failed to establish a prima facie case of discrimination in pay.

### C. Count V: Harassment

Martinez and Lopez's fifth and final count is a broad allegation of "harassment." Lakeshore presumes the allegation to be another Title VII claim, and Martinez and Lopez treat it as such in their response brief. Specifically, Martinez and Lopez allege "many instances of harassment, including not being allowed to speak Spanish, and many hostile remarks and hostile treatment from both management and other employees." (ECF No. 31 at PageID.319.)

The standard for a hostile work environment must be sufficiently demanding so that "Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 275 (1998); *Oncale v. Sundown Offshore Services, Inc.*, 523 U.S. 75, 118 S. Ct. 998 (1998). A plaintiff must show a hostile working environment "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (internal quotation marks and citation omitted). The Court must consider the totality of the circumstances in determining whether a workplace environment is hostile or abusive, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S. Ct. at 371. "A mere unfriendly work environment is insufficient to establish liability." *Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 118 (6th Cir. 2003).

Martinez and Lopez "contend that there was a policy and culture of [speaking] English only" (ECF No. 31 at PageID.320). However Lakeshore's affidavits refute the existence of such

11

a policy, with employees stating, under oath, that they regularly spoke Spanish without any employment issues. Martinez and Lopez cite instances of purported harassment from their depositions but do not address the surrounding context that often discounts the purported harassment. They also allege that managers were rude and impolite, that a manager once called Martinez "stupid," and cite one broad comment that a fellow crew member made about Mexicans. Martinez and Lopez frequently fail to draw a connection between the purported hostile work environment and their Mexican heritage beyond conclusory statements such as "Charlotte only acted [rudely] around Plaintiffs." (*Id.* at PageID.321.)

Considering the totality of the circumstances, Martinez and Lopez fail to show an objectively hostile or offensive work environment. Over the course of their roughly eight-year employment prior to the suit, Martinez and Lopez allege a work environment that is, at times, "mere[ly] unfriendly," and cite a handful of unpleasant situations and encounters. Any connection to their national origin is attenuated, and Martinez and Lopez draw the connection only with conclusory statements. "In short, [Martinez and Lopez's] allegations reveal no more than 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language,' that is not actionable under Title VII." *Hairston*, 2015 WL 9304558 at *5 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284 (1998)).

Accordingly, the Court will grant Lakeshore's motion as to Count V.

### D. Individual Liability Against Price

Because the Court will grant Lakeshore's motion as to all claims, there is no liability that could be extended to Price and the Court need not address the issue of Price's liability as an individual, or lack thereof.

**E. The Plaintiffs Have Stipulated to the Dismissal of Count IV–the Equal Pay Act Claim**

## V. <u>CONCLUSION</u>

Because there is no genuine issue of material fact, the Court will grant Lakeshore's motion for summary judgment and for dismissal with prejudice.

A separate Order will issue.


Dated: March 26, 2018                             /s/ Gordon J. Quist
                                                          GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE